Good morning. May it please the Court. My name is John Gunter and I represent the appellant, Nathan Webb. The District Court dismissed Webb's complaint on the ground that he failed to plausibly plead that his ex-girlfriend, Nicole Upchurch, lacked actual authority to consent to a police search of his home. However, the District Court erred because Webb plausibly pleaded that Upchurch lacked actual and apparent authority and because the District Court based its decision on unwarranted inferences from a North Carolina appellate opinion. Under United States v. Matlock, actual authority to consent to a search of a home rests not on a person's mere property interest, but upon all the surrounding circumstances that indicate that that person lacks joint access and control for most purposes. Thus, courts typically look at all of the surrounding factors in a case and utilize a multi-factor totality of the circumstances test to determine whether joint access and control is present in any given case. Mr. Webb plausibly pleaded that Upchurch lacked that joint access and control for most purposes because- She was on the lease, right? Yes, Your Honor, she was. And how does that- hasn't at least one court held that that's sufficient? I'm not aware of a court that's held that a lease by itself is sufficient on its own, Your Honor. I've certainly- She did live until two days or three days prior to it in this place, right? She did have keys then. I mean, taking all the facts of this case with her name on the lease, isn't there a circuit that would have said that's a sufficient amount of ownership to give her a right to get into the house? I'm not aware of any circuit that has said that at this point, Your Honor, and- What's the law in North Carolina? Are you referring to- What are the rights of a lessee? I'm not- To the property that she has leased? I'm not certain on the state property law issue, Your Honor. I would imagine that there is- while one is on the lease, that there would presumably be- it's a property interest, Your Honor. However, United States v. Matlock says- Property interest in what? Against the whole world? It'd be a- I'm sorry, I- If you rent an apartment, you have a right to live in it. Yes, Your Honor. Rent a house, you have a right to live in it. You have a right to go and come to the house as long as you're paying the rent, I suppose, in compliance with the rest of the terms, even against the landlord, right? Yes, Your Honor. She was a lessee of the property at the time this occurred. Yes, Your Honor, that's true. And- but in this case, she had- in this case, the Fourth Amendment analysis of actual authority is distinct from the property law- Her man was the co-lessee. Yes, Your Honor. It's a distinct analysis- He left- he was somewhere else. He didn't show up at the house. No, Your Honor. He was there. Yes, Your Honor. And her belongings remained in the house. Your Honor, it's not clear, precisely, what precisely how much of her belongings remained at the time. The record indicates that she had sent a friend- It doesn't matter how much of her belongings were there? I think it does, Your Honor, because if- and if it doesn't matter, then it could create issues where a person could simply leave behind just anything in a home and then leave to go somewhere else and live somewhere else and then say they somehow still have actual authority over that home to consent to a search. But in this case, Your Honor, the facts that Webb did plead on his side are that Upchurch had surrendered her key to Mr. Webb prior to the search. Said she's moving out. Yes, Your Honor. Because he injured the baby. Yes, Your Honor. She was leaving. And in addition that- The policeman knew that, too. And she did leave. Yes, Your Honor. Yes. She was staying with her family. She had moved to her family's home in Clayton, North Carolina, some 30 miles away from the- from Mr. Webb's home. Was that at Mr. Webb's home in Raleigh? I believe it was in Cary, Your Honor. In Cary, on the other side of town, on the other side of the city. Yes, Your Honor. And additionally, on the day of the June 4th search, she returned with the police to encounter a locked door and then- The police were there because they've been-  And so they- And she needed her things from the house, the baby's things. And they escorted her there. I thought they were protecting her. They were worried about not so much investigating, but just being sure everything was okay with her going back to the house. Your Honor, the record's not completely clear as to the reason why they were with her. Detective Braun did indicate in her police- The record here is blank. Yes, Your Honor. The complaint mentioned the gun. They were over there. She had told him he had a gun in there. Yes, Your Honor. And- Is that in the record? The gun? Yes, Your Honor, it is. And I was referring to Detective Braun's police report, which is in the joint appendix. She had indicated- The complaint includes the complaint and the attachments to the complaint, correct? Yes, Your Honor. That's what we consider. Yes, Your Honor. Where are- In the joint appendix, there are only four pages of the attachments to the complaint. Where's the rest of the attachments to the complaint? I'm not certain, Your Honor, where the rest of it is. It'd be in the record. It'd be in the record on appeal. Right. Right? I mean, this appendix is not the record on appeal. It's not in the joint appendix. Yes, Your Honor, yes. So it is in the record on appeal, and the statement of the investigating officer, which was attached to the complaint, does indicate why they were there. It says, to assist Ms. Upchurch, in parentheses, live-in girlfriend, in retrieving personal property from the residence she shared with the defendant. That's what the attachment to the complaint says. Yes, Your Honor. And I guess what I was referring to is that Detective Braun in her police report said that the reason that they were accompanying her was a matter of police procedure, and it's not clear what precisely the procedure is in that case, because it would presumably be perhaps the investigation or perhaps because they – Mr. Webb in his complaint had said that there was no history of child abuse – I'm sorry, there was no history of domestic abuse among them, and so he had questioned why they would be accompanying her to the home. But as to the specific purpose of that, then it would certainly, yes, be to collect her things, but the reason that Detective Braun said that he had no choice in the matter was that it was a matter of police procedure in that point, and it's not clear exactly what was the reason for that procedure. There's a telephone call between the lady and your client during this entry to the house, right? Yes, Your Honor. And police officers, and they're saying – and ultimately one of the police officers says, oh, we didn't need your key anyway, because – is that right? Yes, Your Honor. Detective Braun – What does the police officer say? Detective Braun told Mr. Webb that they didn't need him because Ms. Upchurch had gotten into the residence, and then Mr. Webb responded that he was going to sue them because she had broken in. They had allowed her to break in to the residence, and that – because the door was locked at the time, and that she had no key. She didn't have her key. No, Your Honor. Because she broke into her own home. She'd given up the key to him, is that right? Yes, Your Honor. And what's the evidence that she broke in? At this point, Your Honor, the evidence is – The allegations that she broke in. Yes, Your Honor. What are they? At this point, the – it's the complaint that Mr. Webb stated that she broke into the home. The police reports are opaque at this point. They don't indicate one way or the other. I believe Officer – Don't they say that she got in? Yes, Your Honor, but that's not the same thing. They don't say that she took her key out and opened the door. No, Your Honor. That's correct. And everybody acknowledges that there was this phone call or series of phone calls in which they tried to get his consent to get into the house, right? Yes, Your Honor. That's true. That took place, what, right before the actual entry? Yes. Yes, Your Honor. Do we know how many calls and what the timing was exactly? I don't believe we know precisely how many calls at this point, Your Honor. On this record, on the complaint, what have we done? He said it was multiple calls, Your Honor. Multiple calls. Yes, Your Honor, and that he told – he said – And he says in the complaint that the officers allowed her to force entry to the rear door. Yes, by breaking in is specifically what he says. It says force entry by breaking in. That's right. That's over here on the side. So there have been no affidavits filed by anybody, right? There are affidavits by the police officers at this point, but I believe they are in reference to a service and process issue. At this point, there hasn't been anything from Ms. Upchurch or Mr. Webb in this case. Is there any affidavit from a police officer putting this fact in dispute, the fact about they assisted her, they watched her break into the house? I don't believe so, Your Honor. We have a police report that is not determinative one way or the other. That's right, Your Honor, yes. And because at the pleading stage we shouldn't decide factual disputes, then we would argue that it should then proceed to discovery to see precisely, did she in fact break in? Why would we have to proceed to discovery, even if you're right on this 12B6 thing? They say, on the right on this part of the 12B6, because they said in the district court that they also were entitled to 12B6 relief based on qualified immunity, which was not addressed. Yes, Your Honor. Wouldn't that have to be addressed first before you went to any discovery? Your Honor, To see whether on the basis of the complaint they were entitled to qualified immunity. Yes, Your Honor, I think that that would be an appropriate remedy to see if in fact, because it wasn't decided below, it was decided on actual authority grounds. You clearly didn't handle it below, right? No, Your Honor. Is there a transcript of what happened below? The transcript, I don't believe so, Your Honor. It's the district court's opinion and the memoranda from both Mr. Webb and from the police officers. Was there a hearing? I believe there, I'm not certain, Your Honor, of that. At what point were you all, was there already, at what point were you appointed? I guess I don't know. Did you compile the joint appendix? Yes, Your Honor, we compiled the joint appendix with the opposing counsel. They were representing Mr. Webb prior to this proceeding. I'm sorry, they were representing the officers prior to this proceeding. Mr. Webb was a pro se plaintiff in prison at the time that he filed this lawsuit and then he has since been released. He wrote it out in hand, right? Yes, Your Honor, he did. He's been released now? Yes, Your Honor. In addition to the... Did he, were these police reports filed by him as attachments to the complaint? Exhibits to the complaint? I believe so. Well, the last page of the complaint, it says page 18 of 18 and then you go into some more stuff, starting page 1 of 23. Yes. It looks to me like they were part of the complaint, the numbers would be continuous. It would be 18 of 41. Your Honor, I remember now that he took some of the parts of the police reports and attached them to the complaint. Why are... Do we know which ones they were? He took... Are they the ones that are in the JA or... Yes, Your Honor. Or do we don't know that? Yeah, it's the ones that are in the joint appendix. There's nothing attached to the complaint that's not in the JA. If we go back and look at the record, there would be, this would be exactly what's in the record in the case. There might be one thing, Your Honor, I'm not certain. I believe there are several things. I read from one of them earlier that's in the docket that was attached to the complaint that's not in the JA. Okay. But the rest of the docket will show that, I suppose. Yes, Your Honor. In addition to the... But you don't know why there's misnumbering here. Why they start out numbering these police reports at page 1 of 23 is if they're separate from the complaint. I believe that those are just photocopies of the police reports themselves. No, but the record, the appendix ought to show exactly what we had and what's in the record. We're going to... It's the records that we need to decide this case. It's going to help us decide. Anyway. You're not alone. Listen, there are people that have worked for us that don't understand the difference between the joint appendix and the record. So you don't... That's right. I'm not being critical. Thank you, Your Honor. That's right. They never read the appellate rules very closely and they don't know the difference. But there is a major difference. Yes, Your Honor. You'll know it now. You'll be way ahead of... I'll remember it from now on, Your Honor. Your life. It's important to note that in addition to pleading plausibly that Upchurch lacked actual authority, the district court wasn't saying that Mr. Webb's pleadings were legally insufficient as a matter of law. It was relying on the State v. Webb opinion, the appeal from Mr. Webb's criminal case, to find that a key fact from one of his pleadings was untrue. And in this case, it's that Upchurch was no longer residing at the residence, that she was residing in Clayton, North Carolina. However, the court drew an unwarranted inference from that opinion because the opinion simply referenced her intent for sleeping away from home. And it's actually completely consistent with a later decision to move out of the home. And in fact, that's precisely what Mr. Webb alleges and that's what he put in his motion to alter or amend the judgment. He included that argument as well. So with that unwarranted inference removed then, the key fact that she was no longer living at the residence still should be taken as true for the purposes of the complaint. Is that an abandonment of the lease then as a matter of law? Is that what your position is? By saying she was moving out and going home to her mother with the baby, does that constitute an abandonment of her legal rights as a lessee? In your view, under North Carolina law? It might, Your Honor. But I think because Mr. Webb is a layman, he's not... Otherwise, she'd be entitled to go back in there. If she is a lessee on the property, it looks to me like she can go in the house. And I thought that if I go home and I don't have a key, I'm entitled to enter my own house somewhere or another. Do you accept that? That she could enter the home because she was on the lease, Your Honor? Yes. I would say that that's certainly possible, but it's not clear to me what North Carolina property law would have to say on this issue. But I would emphasize that the Fourth Amendment inquiry is distinct from the property law inquiry. And in this case, it would be all of the facts suggesting whether she did in fact have that joint access and control for most purposes. And all of these other factors would then suggest that she did not have joint access and control for most purposes. So just being on the lease, if there were other factors that weighed the other way, you would say that she didn't have the rights under the Fourth Amendment? Yes, Your Honor. That's it. All right. I think we understand your argument. Maybe we'll let the... Thank you. Thanks so much. David Coates. May it please the Court, good morning. My name is David Coates. I represent the appellees, defendants, Kerry Police Detective Braun, and Kerry Police Officers Van Hout and Smith. I think it's important to establish what the District Court had before it when it decided the 12B6 motion, which is... So, you know, you have an obligation to also prepare, you're supposed to jointly prepare the joint appendix. You're obviously an experienced lawyer, so it's probably a good idea to put everything in that's attached to the complaint because the 412B6 motion, we're, as my friend said, entitled to consider it all. Yes, Your Honor. And apparently it's not all in the record, I mean, in the joint appendix, is that correct? No, Your Honor, a point very well taken. It's not all in the record? It's not all in the joint appendix. It's all in the record, yes, sir. It's not in the joint appendix? Yes, sir. Okay. So there's some things left out of the appendix that ought to have been in there. Yes, sir. And I think the... Do you know what they are? Can you specify? Portions of the police narratives in the police report. Yes. Ben Houghton and Smith had their own narratives, as did Detective Braun, their own narratives in the report, and that is partially in the joint appendix, but not completely, but it is completely in the record on appeal. Does any of that inform the issue here? I think it does somewhat since it's attached to the complaint about what the officers were dealing with on the night of June 4, 2010, yes, sir. I think he's already admitted in the complaint in Paragraph 10 that Ms. Upchurch had belongings in the house, admitted in Paragraphs 14 through 16 of the complaint. He was voluntarily not present on the night of June 4, 2010. He was supposed to be there. Officer Smith called him time and time again. He hung up the phone. He hung up the phone. Well, but the officer calling time and time again suggests to me that the officers, there is no claim here that the officers didn't know that he was asserting his rights to not have them come into his house in which he paid the rent and in which he had all the keys. And you're telling us once again. I mean you somehow are relying on the fact that the police officers were called time and again that night before the entry, the unauthorized entry, or the assertedly unauthorized entry. I'm not sure somebody who has a leasehold interest in the property can make an unauthorized entry. Well, you're the North Carolina lawyer here. Yes, sir. We'd expect you to know a lot more about that than we would or this young man from the University of Virginia. You can probably tell us what the law is for a lessee entering the property. Yes, sir. There's a North Carolina Landlord Tenant Act. It's discussed in detail in Webster's Treatise on North Carolina Real Estate Law. She has an absolute right as a lessee to go into that house. Well, is that featured in your brief? It is not featured in the brief, Your Honor. And I guess there's an argument that the Fourth Amendment analysis is different than the property law analysis. It may be the same, but it may be different. There is case law that says that even if you do have a leasehold interest, you can be a person that is not entitled to entry under certain circumstances. The thing I'm most curious about is I understand that you made an argument that your clients were entitled to qualified immunity below. Is that correct? Yes, Your Honor. But you have not made that argument in front of us. The court did not reach that, Your Honor. on the grounds of common authority to allow entry into the house, and it did not discuss the process defenses of the qualifier. You're familiar with the fact that we can affirm on any ground that it's fairly presented to us. Yes, Your Honor. That argument is fairly presented to us, I guess. I appreciate that. I would mention that Detective Braun, before the entry on June 4, 2010, did have conversations with Mr. Webb. Officer Smith tried. Detective Braun got through, and he said, I'm not coming back to the house. I'm not coming back to the house at all. So it's different than the Fernandez case, for example, which I think is a stronger case. I think the Fernandez v. California case that was decided a couple weeks ago by the Supreme Court is the strongest case on point. I think that case was even stronger for the objecting co-tenant because in that case the objecting co-tenant was physically present and objected, was taken from the scene pursuant to a lawful arrest, but was physically present and objected while physically present to the search. I don't think the record is unclear that he objected and continued to object and was objecting seconds before they entered. And the police officer, indeed, I mean, in the record before us, the police officer calls him back and sort of is yada, yada, yada. You lose because we got in anyway. Too bad for you. Kind of rubbing in. Yeah. So I don't think that's your strongest argument. I mean, I think he's made his objection to the entry pretty clear. He hasn't just abandoned the house. But the Fernandez case says you've got to be physically present. He was not present. That's right. Right. That's exactly right. But they knew that he didn't. They cured that problem by calling him all the time. Your clients. They had the co-tenant present and the question is whether she can do it and whether he's, well, it's 12B6 here, whether he's led to another complaint. Do you take the position, would you take the position or plan to take the position that your clients are entitled to qualified immunity on the basis of their record as it presently exists? Yes. The officers were acting. So if we were to be of the view that the complaint's sufficient, would you immediately then go to discovery or would you try to litigate and resolve the official versus foresight claim that you throw into your brief in the district court? I don't think discovery would be needed, Your Honor. Do you think you can win on qualified immunity right now? Yes, sir. Do we have a right to decide that issue right here now on the Court of Appeals? I believe so. Well, why would we decide it when the district court didn't even address it? And you didn't raise it on appeal. No, sir. So that'd be kind of a reach for the appellate court. I think the Pratt case from the Sixth Circuit, for example, Your Honor, when Your Honor mentioned that the leasehold interest in and of itself suffice, the language in the Pratt case in the Sixth Circuit does say that the co-tenant who allowed entry had a leasehold interest, and that leasehold interest in and of itself, quote, strongly supports the police officer's reliance on that fact. But there's a case from the Eleventh Circuit that said a spouse who jointly owned the property didn't have a lease, didn't have sufficient interest. So, I mean, you know, I think the law is all over the place. I don't think, Your Honor, since Fernandez has come out, that it really is all over the place because you've got to be physically present to object, and there's no physically presence to object here. And so, under Fernandez, even though if you object time and time again, even if you tell the officers by phone, by fax, by e-mail, by text, what have you, I object to your entry into the house, and I object to the co-tenant allowing me entry into the house, that is immaterial. You've got to be physically present at the house to object. And absent that, the co-tenant has that authorization. The only question is, did the co-tenant, Bishop Church, have that common authority? Well, I would agree with you that Fernandez is very helpful, except for the fact that your client kept calling the defendant so that it wasn't like they could argue, as was argued in Fernandez, well, he's gone away, he's not here to object. They brought him his objection present to the site by continually calling him. And they knew that because then they called him after they'd gotten in the house and said, you know, we didn't need you. So they knew full well that he continued to object, unlike Fernandez where you just walk away and you're not there to object. They knew at the time they got in the house that he was objecting. According to this complaint, maybe your client says something else, but it doesn't sound like they do. It sounds like they can see that fact. I don't. I mean, we can see the fact that we tried him time and time again because he was supposed to meet us at the house on June 4th. And that he objected to your going in. He did object. A fact missing in Fernandez. I don't believe so, Your Honor, because Mr. Fernandez did object and he was taken away from the scene by an arrest. And I think according to the opinion of Fernandez, again, it's immaterial, the method of communication of the objection. You've got to be physically present, standing with the officer at the premises. And if it's by telephone, you're saying you object, I don't believe that's immaterial, Your Honor. Well, Fernandez might help you on a qualified immunity argument. I'll give you that. But I don't think that Fernandez brings you home without that on a complaint. What's your best argument, standing there on your feet, as to why you're entitled to qualified immunity? Why your clients are entitled to qualified immunity? That the officers who are present at the scene, Ben Houghton and Smith and Detective Braun, were all acting pursuant to their roles, their official roles and their official capacity for the Cary Police Department. The narratives of their reports are there, and that they were pursuant to those actions, they were acting, they were entitled to qualified immunity. You say they acted reasonably? Yes, sir. Good faith? Yes, sir. They did not force entry, if entry was forced at all, into the house. Ms. Upchurch, of her own accord, entered the house, and of her own accord, allowed the officers in the house. The officers did not do any of that. And again, with respect to the common authority, you have a woman who had a leasehold interest in the property. She had lived there continuously for nine months. She had personal belongings in the property. She brought her child there. She and the child lived together for six weeks in the house until the felonious child abuse occurred. And she did leave voluntarily once the child abuse became manifest. But respectfully, Your Honor, I think that is something that is seen time and time again in domestic abuse cases, where you have the suffering partner goes to a shelter, goes to a family's house, this, that, and the other. They still have a leasehold interest in their apartment or their rental house. I don't think because you're the subject of domestic abuse or subject to abuse of your child, that you've lost all rights and interest to go back to that house to get your personal belongings whenever you want to. And so I think that... And the Supreme Court supports that in the Fernandez decision. They speak directly to that point that you're making. Yes, Your Honor. I don't think anyone can say on June 4, 2010, Nikki Upshurst did not have a right to go to that house on 1212 Old Apex Road in Cary and go into that house. But the question is whether the officers had the right to go in in view of his steadfast objection, explicit objections that, I don't want you in my house. And they knew it. They kept calling him and they kept saying, Don't go in there. I think... You know, maybe you're right on the young lady going in there to get her belongings. But maybe he states a claim on the rest of it. I don't know. I don't believe so, Your Honor. Once she enters the house in her own manner, of her own volition, in her own accord, and then she voluntarily lets the police officers in... I wish you'd had the district judge address the qualified immunity thing, too. Then at least maybe we could depict something here as a selection process. Yes, sir. I don't know which way is right. I don't know. You just sort of abandoned that in the district court and then didn't say anything about it on appeal either. There was no hearing in the district court, correct? No, Your Honor. There was not. But you raised it in your brief and he ruled against you. Did you go back and ask for reconsideration on any? He did not rule against us on that issue or the issue with respect to property services. He didn't address the qualified immunity issue. He didn't go back and say that. We did not go back and ask the district court to do that. I would also, just as a minor point, I think Judge Thack, in particular, mentions the record before the court and what's to be decided on the 12B6 motion. The Rule 59e motion that the plaintiff filed after the district court entered the order to dismiss, the reply brief, for example, mentions certain facts from that. Okay, okay. Thank you, Your Honor. Thank you very much. I think we understand, Your Honor. Thank you very much. Mr. Gunter, do you have any rebuttal? Your Honors, I'd just like to emphasize quickly, once again, the distinction in the Fourth Amendment analysis and the state property law analysis. Certainly, the state property law interest is relevant to any consideration of whether a person has joint access and control, for most purposes, under the Fourth Amendment. But in this case, we would argue that it's not. In this case, and in these cases with so many facts indicating that Upchurch lacked that access, we would argue that it's not dispositive. And in this case, she had specifically indicated to Mr. Webb that she was no longer going to be living in the home, that she was moving to her family's home in Clayton, North Carolina, as you said, on the other side of town, Your Honor. And then she had given back her key and that she broke into the home. At that point, Your Honor, that indicates that she did not have the joint access and control, for most purposes, on that day and that she, in fact, instead had to use force to break in over the objections of Mr. Webb. Thank you. Thank you very much. We would like to come down and greet the lawyers and then we'll take a short recess. Mr. Gunter, I understand that you are court-appointed as well. I understand that you're court-appointed as well. We very much appreciate your efforts. You did a fine job.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker